# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **PHILLIP DAREN SHOCKEY,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 6:19-CV-03108-MDH |
| | ) | 6:14-cr-03072-MDH-1 |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is Movant's Motion to Vacate Pursuant to 28 U.S.C. § 2255. (Doc. 5). Movant's motion raises eight grounds from which he alleges he is entitled to relief for ineffective assistance of counsel. On October 19, 2020, the Court conducted a hearing on the pending motion. The parties were then granted leave to file supplemental briefing. The parties have now filed their briefs and the matter is ripe for review. For the reasons set forth herein, Movant's Motion to Vacate is denied.

## BACKGROUND

On August 27, 2014, a grand jury in the Western District of Missouri returned an indictment charging Shockey with conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349. Shockey was charged as the principal architect of a large conspiracy to pass counterfeit checks in Missouri and Oklahoma.

On January 14, 2015, Shockey pleaded guilty to conspiracy to commit bank fraud and agreed to a money judgment. (Crim. Doc. 91). Shockey entered into a written plea agreement and in doing so waived his constitutional rights to a jury trial and waived his right to appeal except on the grounds of ineffective assistance of counsel or prosecutorial misconduct. (Crim. Doc. 93).

1

The plea agreement contained a factual basis of the offense; a statutory range of punishment for the offense that was up to 30 years imprisonment; and the sentencing procedures that would be utilized by the Court that included presentence investigations and the Court's discretion to vary from the advisory Sentencing Guidelines. *Id.* Shockey acknowledged that his guilty plea was knowing and voluntary, that he was satisfied with his defense counsel, that he was not induced into the guilty plea.

On May 8, 2015, Ian Lewis filed a motion to withdraw alleging a conflict of interest. On May 11, 2015, Lewis was granted leave to withdraw and Jason Coatney was appointed to represent Shockey. Several motions to continue and for extensions of time were filed regarding Shockey's sentencing hearing and presentence investigation reports. Shockey was ultimately sentenced on June 21, 2016 to 134 months imprisonment.

Shockey appealed the sentence arguing the sentence was unreasonable and ineffective assistance of counsel. The Eighth Circuit dismissed Shockey's claims of ineffective assistance of counsel on direct appeal and further concluded that the appeal waiver Shockey entered into was enforceable and applicable to the remaining issues raised on appeal. (Crim. Doc. 240-1). The Eighth Circuit dismissed the appeal.

Shockey now moves to vacate his conviction and sentence raising eight grounds of ineffective assistance of counsel.

**STANDARD**

A prisoner may move for the court to vacate, set aside, or correct the sentence imposed on the prisoner by alleging "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

2

attack[.]" 28 U.S.C. § 2255.  A claim of ineffective assistance of counsel may be sufficient to attack a sentence under section 2255; however, the "movant faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

In such cases, the court must scrutinize the ineffective assistance of counsel claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.*  Under *Strickland*, a prevailing defendant must prove "both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).  As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." *Id.* (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir.)).  Courts are highly deferential to the decisions of counsel and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  A reviewing court must look at the circumstances as they appeared to counsel at the time of the proceeding and should rarely second-guess an attorney's tactics or strategic decisions. *Lacher v. United States*, No. 05-3175-CV-S-RED, 2006 WL 744278 (W.D. Mo. Mar. 23, 2006).  As to the "prejudice" prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cheek*, 858 F.2d at 1336 (quoting *Strickland*, 466 U.S. at 694).

## ANALYSIS

Movant raises eight grounds for ineffective assistance of counsel in his motion:  Ground 1: Ian Lewis had a conflict of interest; Ground 2: the Court failed to inquire about the conflict of interest; Ground 3: Ian Lewis misled Movant about the checks seized by the government; Ground 4: Lewis misled Shockey about the checks seized at the time of his arrest; Ground 5: at sentencing

Coatney failed to present case law regarding the intended loss amount; Ground 6: Coatney failed to present evidence to contest the use of four checks listed in the fourth addendum to the PSI regarding intended loss; Ground 7: Lewis did not conduct a reasonable investigation of the checks; and Ground 8: Lewis failed to file a motion to suppress. Movant's supplemental brief focuses on Ground 6.[1]

**Grounds Five and Six**

In Ground Six, Movant argues that his sentencing counsel, Jason Coatney, was ineffective for failing to present evidence reflecting four checks totaling $282,085.75 that he alleges should not have been included as intended loss. Ground Five argues Coatney failed to present case law regarding the intended loss. Movant argues that if the checks had been excluded his total offense level would have been 24 instead of 26, producing a revised advisory range of 100-125 months.[2] Coatney objected to the inclusion of these checks in the intended loss calculation on the basis that the Government had lost the checks. However, Movant argues Coatney did not argue that the checks themselves were not properly considered as intended loss because Movant never intended to negotiate the checks themselves.

Coatney did not testify at the hearing. Movant testified that he never intended to negotiate the checks and Coatney failed to object on that basis. Movant argues that Coatney was ineffective for failing to put on evidence that Movant never intended to negotiate $282,085.75 in checks and that if Coatney would have called Movant to testify at the sentencing hearing he could have

---

[1] Movant states that if the Court grants relief on Ground 6 and resentences him to time served he will abandon all his other § 2255 claims.

[2] Movant states the fourth addendum to the PSR, which the Court adopted, determined the intended loss was $592,427.51, producing a 14-level loss enhancement under the Guidelines. (ECF 204 at 2-3). If the $282,085.75 had been excluded, the loss enhancement would have been 12 instead of 14.

provided that evidence. Movant contends he was prejudiced by this error because he would have received a 100-125 month advisory range instead of a 120-150 month range used at sentencing.

Here, Movant had two sentencing hearings. At the first sentencing hearing, Movant objected to the intended loss amount arguing he should only be accountable for the actual loss. Coatney raised the issues with the Court and there was extensive discussion regarding the calculations of the intended and actual loss. Movant was given an opportunity to proceed to trial on the issue of the intended and actual loss but stated he did not want to withdraw his guilty plea. At that time, defense counsel stated that he had not reviewed the individual checks with Movant and did not know if prior counsel had done so. Movant disputed that he had the executed checks in his possession but stated he wanted to move forward with the sentencing hearing and stated he did not want to withdraw his guilty plea. (Crim. Doc. 235). In fact, Movant initially stated he wanted to waive his objection and proceed with sentencing during the first hearing.

However, Movant then changed his mind. Movant asked the Court for a continuance of the first sentencing hearing to investigate the figures presented to the Court and to review the documents. The Court granted a continuance. The second sentencing hearing was conducted on June 29, 2016. At the second hearing Movant again asserted that he had never possessed the unpassed checks seized in Tulsa during his arrest and that the government had failed to prove the checks existed. (Crim. Doc. 211). The Court discussed its review of the reports and that it would overrule the objection. Movant at that time, knowing the checks had not been produced and that he had not reviewed the checks, did not withdraw his guilty plea.

Here, Movant cannot establish that Coatney's representation at sentencing was deficient nor that any alleged deficient performance prejudiced his case. Movant has not shown that there is a reasonable probability that but for Coatney's representation at sentencing the proceeding

5

Case 6:14-cr-03072-MDH   Document 281   Filed 05/26/21   Page 5 of 10

provided that evidence. Movant contends he was prejudiced by this error because he would have received a 100-125 month advisory range instead of a 120-150 month range used at sentencing.

Here, Movant had two sentencing hearings. At the first sentencing hearing, Movant objected to the intended loss amount arguing he should only be accountable for the actual loss. Coatney raised the issues with the Court and there was extensive discussion regarding the calculations of the intended and actual loss. Movant was given an opportunity to proceed to trial on the issue of the intended and actual loss but stated he did not want to withdraw his guilty plea. At that time, defense counsel stated that he had not reviewed the individual checks with Movant and did not know if prior counsel had done so. Movant disputed that he had the executed checks in his possession but stated he wanted to move forward with the sentencing hearing and stated he did not want to withdraw his guilty plea. (Crim. Doc. 235). In fact, Movant initially stated he wanted to waive his objection and proceed with sentencing during the first hearing.

However, Movant then changed his mind. Movant asked the Court for a continuance of the first sentencing hearing to investigate the figures presented to the Court and to review the documents. The Court granted a continuance. The second sentencing hearing was conducted on June 29, 2016. At the second hearing Movant again asserted that he had never possessed the unpassed checks seized in Tulsa during his arrest and that the government had failed to prove the checks existed. (Crim. Doc. 211). The Court discussed its review of the reports and that it would overrule the objection. Movant at that time, knowing the checks had not been produced and that he had not reviewed the checks, did not withdraw his guilty plea.

Here, Movant cannot establish that Coatney's representation at sentencing was deficient nor that any alleged deficient performance prejudiced his case. Movant has not shown that there is a reasonable probability that but for Coatney's representation at sentencing the proceeding

would have been different. Movant was given multiple opportunities to raise his objections to the evidence regarding the checks, did in fact raise those objections on the record, and after being fully advised of his right to proceed to trial on any such issue made an informed decision to plead guilty to the conspiracy. Movant did not withdraw his guilty plea despite his knowledge of the evidence.

The Court further notes Movant's criminal history, including 18 felony convictions for theft by deception, forgery and fraud. At sentencing the Court stated, "I, frankly, came into this courtroom thinking that a sentence above the guidelines was probably necessary for you. A person who is on supervised release for a financial crime and who immediately sets up a substantial network to again commit a financial crime is not getting the message." The Court further stated… "But I'm going to give you the benefit of the doubt and say that meth was the cause of your problem. To me, though, that doesn't justify anything other than a -- it may prevent me from going above the guidelines but I don't think it justifies anything below the guidelines by any means." (Crim. Doc. 211). The Court then sentenced Movant to 134 months, a middle of the advisory Sentencing Guidelines range sentence.

For all the reasons set forth herein, the Court finds no basis for relief under Grounds Five and Six.

**Grounds One and Two**

Movant argues Ian Lewis had a conflict of interest while representing him and that the Court failed to conduct an inquiry into the nature of the conflict. Lewis represented Movant through his initial proceedings and change of plea hearing. While the PSR was being prepared, Lewis filed a motion to withdraw as Movant's counsel, citing a conflict of interest. (Crim. Doc. 117).

6

During the § 2255 hearing, Lewis testified that he has been a Federal Public Defender for 14 years. He stated he met with Movant at least four to six times either in person or on the telephone during his representation of him. Lewis testified that during his representation of Movant he was not aware that his father represented a co-defendant in the conspiracy. He stated that he first became aware of his father's representation of a co-conspirator in this case after Shockey filed his response in this § 2255 case. Prior to Movant raising that issue in this proceeding Lewis was not aware of his father's representation of a co-defendant.

Lewis explained that his withdrawal from the criminal proceedings was a result of Lewis discovering that Movant had provided information against an individual identified as D.A. and that through an investigator in his office he became aware that another attorney in Lewis's office represented D.A. As a result, upon learning this information Lewis filed a motion to withdraw the same afternoon he became aware of the conflict. Lewis stated he did not notify Movant of the conflict and did not recall having any additional contact with him after the guilty plea.

Movant argues that he has no recollection of engaging in discussions with Lewis regarding providing information of criminal activities to the Government, that he believes the conflict actually arose because Lewis' relative represented Movant's co-defendant during the entire time Lewis represented Movant. Movant points to Comment 11 to Rule 4 – 1.7 that provides:

> When lawyers representing different clients in the same matter or in substantially related matters are closely related by blood or marriage, there may be a significant risk that client confidences will be revealed and that the lawyer's family relationship will interfere with both loyalty and independent professional judgment. As a result, each client is entitled to know of the existence and implications of the relationship between the lawyers before the lawyer agrees to undertake the representation.

The Government claims that Movant fails to establish that defense counsel's performance was adversely affected by any conflict. The Government also argues that Movant fails to show that he otherwise would have moved to withdraw his guilty plea had he known of the conflict. As

7

previously discussed, Movant was given opportunities to withdraw his plea at sentencing but did not do so. See *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (Prejudice on such a claim is presumed only where the movant shows that defense counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance.").

Here, the Court finds Lewis's testimony credible that he was unaware of any familial conflict and further his withdrawal upon learning of the conflict within his office was appropriate. Further, Movant cannot show that he suffered prejudice as a result of any such conflict. The mere existence of a conflict does not establish prejudice. As previously stated, Movant had multiple opportunities to raise any objections he had, to withdraw his plea and proceed to trial, but chose to plead guilty and proceed with his sentencing.

**Grounds Three, Four, Seven and Eight**

Movant argues that counsel was ineffective by misleading Movant about the checks seized by the Government at the time of Movant's arrest, by failing to investigate his case, and by failing to file a motion to suppress. Here, as discussed throughout, Movant and his counsel raised the issues regarding the checks throughout his criminal proceedings. Movant was fully aware of the nature of the checks and the evidence against him when he pled guilty. Further, Movant had the opportunity to withdraw his guilty plea at sentencing when he raised objections to the actual and intended loss numbers that were included in his PSI. Despite being fully informed of the loss amounts and the checks being offered against him, Movant made an informed decision to plead guilty and proceed with his sentencing. Movant raised the issue that he had not been presented checks in the first sentencing hearing, that hearing was postponed, and Movant again asserted he never possessed certain unpassed checks at his second sentencing hearing. However, Movant did

8

not request to withdraw his guilty plea despite his knowledge of these facts. As a result, Movant cannot establish but for this information he would not have plead guilty.

Ground 7 claims counsel was ineffective for failing to conduct an investigation into the case, including into the checks. Movant claims that Lewis told Movant that production of the checks was vital to the Government's case and that Lewis had personally seen the checks in the prosecutor's office. However, Movant made the decision to plead guilty. Further, as discussed herein, at two different sentencing hearing where the checks were discussed at length, Movant failed to withdraw his guilty plea and knowingly proceeded with sentencing. As a result, Movant cannot establish that if he had known that Lewis had not reviewed the checks, or had done "more investigation," that he would have insisted on going to trial. The existence and amounts of the checks were raised throughout the hearings and Movant was fully aware of the issues raised by his counsel.

Finally, by pleading guilty, Movant waived his right to raise in this § 2255 case claims unrelated to ineffective assistance of counsel or prosecutorial misconduct. Movant pled guilty and in doing so knew that a motion to suppress had not been filed and was fully aware of the information against him regarding the checks he now disputes. For the reasons set forth herein, Movant has failed to demonstrate that he is entitled to relief based on the ineffective-assistance claims he has raised in his pleadings and his motion is denied.

## DECISION

For the reasons set forth herein, Movant's Motion is **DENIED** in it is entirety. The Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2) (certificate of appealability may be issued "only if [Movant] has made a substantial showing of the denial of a constitutional right"). The Clerk of the Court shall enter judgment accordingly.

9

**IT IS SO ORDERED**.

DATED: May 26, 2021

                                           */s/ Douglas Harpool*
                                           DOUGLAS HARPOOL
                                           UNITED STATES DISTRICT JUDGE